# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK URIAH THAXTER, | |
| Petitioner, | CIVIL ACTION NO. 1:14-cv-02413 |
| v. | (CALDWELL, J.) |
| | (SAPORITO, M.J.) |
| MARY SABOL, Warden of York County Prison, et al., | |
| Respondents. | |

## <u>REPORT AND RECOMMENDATION</u>

Following a conference call with counsel and the submission of briefs and supporting exhibits by both parties, we have determined that the petitioner has been placed in removal proceedings, and has been detained pre-removal, pursuant to 8 U.S.C. § 1226(c), for more than 31 months while these immigration proceedings have progressed. Recently, we understand that the underlying removal case was remanded from the United States Court of Appeals for the Third Circuit to the Board of Immigration Appeals ("BIA") for further consideration.

With the passage of more than one year in pre-removal detention, the petitioner has come before this Court on a petition for a writ of habeas corpus (Doc. 1) seeking an individualized bail consideration. In

these circumstances, the Third Circuit has directed that basic considerations of due process now require that the petitioner receive prompt, individualized bail consideration at a hearing where the government bears the burden of proving that the petitioner's continued detention is necessary to fulfill "'the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.'" *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 475 (3d Cir. 2015).

Accordingly, in accordance with the guidance provided to us by the Third Circuit, through this report and recommendation, we propose a process by which the petitioner will receive this bail consideration from an Immigration Judge, while this Court retains the authority to conduct its own individualized bail consideration, if necessary, as part of its federal habeas corpus jurisdiction.

## I.   DISCUSSION

One of the statutory and constitutional duties conferred upon this Court is the responsibility to address federal habeas corpus petitions filed by immigration detainees who challenge their continued detention as unconstitutionally excessive. Over the past several years, case law in

this field has evolved significantly, providing far greater clarity to the courts regarding the benchmarks they should apply when discharging this important responsibility, a duty rooted in our constitution.

Most recently, in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), the Third Circuit has provided us with an analytical paradigm to apply when assessing these excessive immigration detention claims in a pre-removal context. As the court explained in outlining the legal terrain in this field:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. *Demore v. Kim*, 538 U.S. 510, 518–19, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. *Id.* At 521, 123 S. Ct. 1708.
>
> The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. *Id.* At 531, 123 S. Ct. 1708. However, as we discuss below, we read *Demore* as also recognizing that there are limits to this power. *Diop [v. ICE/Homeland Sec.]*, 656 F.3d 221 [(3d Cir. 2011)]; *Leslie v. Attorney Gen. of the United States*, 678 F.3d 265 (3d Cir. 2012).

When the Supreme Court upheld the constitutionality of the law in *Demore*, it also gave us insight in to how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. *Demore*, 538 U.S. at 523, 123 S. Ct. at 1708 (citing *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993)). But, it put the alien's issue in perspective, saying "'[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Id.* at 521, 123 S. Ct. 1708 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976)). The Court went on to say that applying "'reasonable presumptions and generic rules'" to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. *Id.* at 526, 123 S. Ct. 1708 (quoting *Flores*, 507 U.S. at 313, 113 S. Ct. 1439); *see also Carlson v. Landon*, 342 U.S. 524, 72 S. Ct. 525, 96 L. Ed. 547 (1952).

The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

*Chavez-Alvarez*, 783 F.3d at 472–73.

Thus, the court in *Chavez-Alvarez* recognized that *Demore* held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the *Demore*

Court based this ruling upon its understanding of the short, fixed, and finite term of any detention prior to removal, which typically should not exceed 6 months. Thus, while *Demore* addressed the due process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, it is also clear that courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process.

Further, the court in *Chavez-Alvarez* provided us with clear guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test, and while noting that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific," *id.* at 474, the court instructs that there are several guideposts that we must consider. For one, in a case where an alien is prosecuting a good-faith challenge to his or her removal from the United States, the Third Circuit held that,

> beginning sometime after the six-month time frame considered by *Demore*, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification

> for using presumptions to detain him without bond to further the goals of the statute. . . . [T]he underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary.

*Id.* at 478.

In prescribing this one-year time frame beyond which the presumption of detention is sufficiently eroded that an individualized bail consideration is necessary, the Third Circuit also defined what showing the government must make to justify the continued detention of the petitioner. According to that court, the immigration statute "'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.'" *Id.* at 475. Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, *at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.*" *Diop*, 656 F.3d at 233 (emphasis added).

Applying *Chavez-Alvarez* to the facts of this case, we conclude that

the petitioner has made a *prima facie* showing to justify an individualized bail hearing. The petitioner's legal challenge to his removal is presented in good faith, the initial benchmark cited by the court in *Chavez-Alvarez*. Indeed, the Third Circuit has recently remanded the petitioner's removal case to the BIA for further consideration. It is also undisputed that the current duration of the petitioner's detention now exceeds the one-year period which *Chavez-Alvarez* found to be presumptively excessive.

Having found that an individualized bail hearing is appropriate, we turn to the question of what process should be afforded to the petitioner.

We recommend that the Court defer to the Immigration Judge in the first instance and refer this matter to the Immigration Judge for a bail determination. In *Chavez-Alvarez*, the Third Circuit suggested that, in many instances, this initial bail determination can—and should—be made by the Immigration Judge, applying the constitutional benchmarks outlined by the courts. *Chavez-Alvarez*, 783 F.3d at 478 n.12. This guidance, in turn, is consistent with the other case law in this field, where this and other federal courts have frequently referred

these bail questions to Immigration Judges in the first instance. *See, e.g. Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008); *Reid v. Donelan*, 991 F. Supp. 2d 275 (D. Mass. 2014); *Chen v. Aitken*, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); *Bautista v. Sabol*, 862 F. Supp. 2d 375 (M.D. Pa. 2012); *Tkochenko v. Sabol*, 792 F. Supp. 2d 733 (M.D. Pa. 2011); *Sengkeo v. Horgan*, 670 F. Supp. 2d 116 (D. Mass. 2009); *Bourguignon v. MacDonald*, 667 F. Supp. 2d 175 (D. Mass. 2009); *Prince v. Mukasey*, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Yet, while we are "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes," *Leslie v. Holder*, 865 F. Supp. 2d 627, 631 (M.D. Pa. 2012), a factor which weighs in favor of allowing an Immigration Judge to make this initial bail determination, we also recognize that the Court has an independent responsibility in this case to determine whether conditions of release may be set in this matter. Indeed, this Court has in a number of instances conducted bail review hearings in immigration habeas matters. *See, e.g.*, *Occelin v. District Director*, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009).

The authority of this Court to set conditions of release for a

petitioner in a federal habeas corpus proceeding springs from several well-established legal sources. Settled case law has long recognized that the power to set bail in habeas proceedings is a legal and logical concomitant of the Court's habeas corpus jurisdiction. In fact, our authority to act in these matters has been long recognized, and carefully defined, by the federal courts, which have held generally in habeas corpus matters that a habeas court may consider bail motions and have prescribed legal standards for such relief. *See Lucas v. Hadden*, 790 F.2d 365, 367 (3d Cir. 1986).

This settled principle, in turn, has been expressly extended to habeas corpus petitions lodged by immigration detainees, as in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), where the court of appeals concluded that, in extending this settled tenet of habeas corpus jurisdiction to petitions by immigration detainees, "we are not required to break new ground so much as to revisit a place where we have been before." *Id.* at 225. The *Mapp* court's analysis of this issue is consistent with case law in this circuit, *see Lucas*, 790 F.2d at 367, is highly persuasive, and this Court has previously cited *Mapp*'s analytical paradigm with approval. *See Nasr v. Hogan*, No. 08-415, 2008 WL 2705533 (M.D. Pa. July 10,

2008).

As a general rule, "courts that have been faced with requests for bail [in habeas proceedings] have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both." *Lucas*, 790 F.2d at 367. In the context of bail petitions by immigration detainees seeking relief in federal habeas corpus proceedings, "a court considering a habeas petitioner's fitness for bail must inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective.'" *Mapp*, 241 F.3d at 230. With respect to this standard:

> When other district courts . . . have applied the[se] standards . . . , "[a]n essential factor . . . [has been] the necessity that the petition present merits that are more than slightly in petitioner's favor." *Richard v. Abrams*, 732 F.Supp. 24, 25 (S.D.N.Y. 1990) (citing *Rado v. Manson*, 435 F. Supp. 349, 350–51 (D. Conn. 1977) (holding that petitioner must be (1) "an exceptionally strong candidate for bail" and make (2) claims of a "substantial nature upon which [he] has a high probability of success"); *Rado v. Meachum*, 699 F. Supp. 25, 26–27 (D. Conn. 1988) (holding that the relevant factors are whether (1) "substantial claims"

are set forth in the petition; (2) there is a
"demonstrated likelihood the petition will prevail"; and
(3) there are "extraordinary circumstances" attending
the petitioner's situation which would "require" the
grant in order to make the writ of habeas corpus
"effective," presumably if granted) (citing *Stepney v.
Lopes*, 597 F. Supp. 11, 14 (D. Conn. 1984)); *accord
Harris v. United States*, [No. 97 CIV.1904(CSH),] 1997
WL 272398, at *1 [(S.D.N.Y. May 21, 1997)].

*D'Alessandro v. Mukasey*, No. 08-CV-914(RJA)(VEB), 2009 WL 799957,
at *3 (W.D.N.Y. Mar. 25, 2009).

Therefore, as a threshold matter in habeas bail proceedings before
this Court, the petitioner bears the burden of showing that this case
presents extraordinary circumstances warranting bail consideration.
Once it is determined that the petitioner has made the threshold
showing that extraordinary circumstances exist which justify the
exercise of this court's habeas corpus jurisdiction, the burden of proof
then shifts to the respondents. As the Third Circuit has expressly found
in this setting where we are considering the alleged unreasonable
detention of an immigration detainee "when detention becomes
unreasonable, the Due Process Clause demands a hearing, at which the
Government bears the burden of proving that continued detention is
necessary to fulfill the purposes of the detention statute." *Diop*, 656 F.3d

at 233.

In the instant case, this Court is called upon to reconcile its obligation to provide an appropriate degree of deference to the judgment of an agency on matters within the jurisdiction of that agency, with its independent obligation to make bail determinations in federal habeas corpus cases. Recognizing the concurrent jurisdiction and responsibilities of this Court and the Immigration Judge in these bail matters, and "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes," *Leslie*, 865 F. Supp. 2d at 631, we recommend that the Court defer to the Immigration Judge to make a prompt individualized bail determination, while retaining jurisdiction to conduct its own bail review, if necessary, under the standards governing bail in habeas corpus proceedings.

## II. RECOMMENDATION

For the foregoing reasons, it is recommended that this matter be referred to an Immigration Judge to afford the petitioner an individualized bail hearing, consistent with the legal benchmarks outlined above, and that the Referral Order explicitly provide that:

1.     The individualized bail hearing before an Immigration Judge

shall be conducted **within thirty (30) days** of the date of the Referral Order;

2.    At this hearing, the Immigration Judge shall make an individualized inquiry into whether detention is still necessary to fulfill the purposes of ensuring that the petitioner attends removal proceedings and that his release will not pose a danger to the community, *see Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 475 (3d Cir. 2015);

3.    At this hearing, the Government shall bear the burden of presenting evidence and proving that continued detention is necessary to fulfill the purposes of the detention statute, *see Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011);

4.    At this hearing, the proceedings shall be recorded by audio, audiovisual, or stenographic means;

5.    The parties shall report to this Court on the outcome of this individualized bail determination by an Immigration Judge within **seven (7) days** after the date of the hearing;

6.    This Court retains jurisdiction to conduct its own bail review, if necessary, under the standards governing bail in habeas

corpus proceedings; and

7.   This matter be remanded to the undersigned United States Magistrate Judge for further proceedings, including scheduling and holding, if necessary, a bail determination hearing under the standards governing bail in habeas corpus proceedings.

**Dated: April 8, 2016**                    ***s/ Joseph F. Saporito, Jr.***
                                         **JOSEPH F. SAPORITO, JR.**
                                         **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK URIAH THAXTER,

     Petitioner,

     v.

MARY SABOL, Warden of York
County Prison, et al.,

     Respondents.

CIVIL ACTION NO. 1:14-cv-02413

(CALDWELL, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated April 8, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: April 8, 2016

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge